IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FIRST WHEEL MANAGEMENT LIMITED, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 17-1059 (MN) |
| INVENTIST, INC. and SHANE CHEN, | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Sean T. O'Kelly, Gerard M. O'Rourke, O'KELLY & O'ROURKE, LLC, Wilmington, DE – Attorneys for Plaintiff

Andrew C. Mayo, Catherine A. Gaul, ASHBY & GEDDES, Wilmington, DE; Benjamin J. Hodges, Devra R. Cohen, FOSTER GARVEY PC, Seattle, WA – Attorneys for Defendants

July 27, 2023
Wilmington, Delaware



**NOREIKA, U.S. DISTRICT JUDGE**

Before the Court is Defendants' "Motion Pursuant to February 28, 2023 Order (D.I. 179),"

seeking to strike Plaintiff's damages theory. (D.I. 180). For the reasons set forth below,

Defendants' Motion is GRANTED-IN-PART and DENIED-IN-PART.

## I.      BACKGROUND

Defendant Shane Chen is the founder and owner of Defendant Inventist, Inc. (together,

"Defendants"). (D.I. 87 ¶ 1). Defendants designed and invented, among other things, a self-

balancing electric unicycle called the Solowheel, which continues to be built and manufactured.

(D.I. 94 ¶ 1).

Plaintiff First Wheel Management Limited ("Plaintiff") and Defendants entered into an

Asset Purchase and Intellectual Property License Agreement ("the Agreement") effective

January 24, 2014. (D.I. 2, Ex. A). In relevant part, pursuant to the Agreement, Defendants were

to (1) transfer to Plaintiff certain intellectual property and technical know-how related to single-

wheel devices, (2) provide consulting services for up to 180 hours and continuing up to six months

after the Closing Date of the Agreement, and (3) provide an option to license the patent rights

related to the Solowheel. (*Id.* at §§ 1.8, 2.1, 3.1(c) & 2.6). As specified in the Agreement, Plaintiff

paid Defendants a purchase price of $2,000,000 in consideration. (*Id.* § 2.5).

Plaintiff filed the instant suit against Defendants on August 1, 2017, alleging various counts

of breach of contract and fraud. (*See* D.I. 2). Defendants answered the Complaint on

August 23, 2017. (*See* D.I. 5 & 6). Plaintiff's surviving claim[1] rests on alleged breaches of three

sections of the contract: section 1.8 and section 2.1 for failure to convey the contractually defined

---

[1]     Plaintiff dropped Count II, which alleged a breach of contract based on the option to license
certain patent rights (*see* D.I. 155 at 20:16-24), and the Court granted summary judgment
on Counts III, IV and V relating to fraud, fraudulent inducement and fraudulent
misrepresentation, respectively (D.I. 167).

Intellectual Property as promised and section 3.1(c) for failure to provide adequate consulting services and technical assistance.  (*See* D.I. 190 at 2).

Plaintiff's damages theory has been somewhat of a moving target throughout this litigation. In the Complaint, Plaintiff's requested relief included damages of $2,000,000 plus expenses in developing a new product based on the intellectual property and the conveyance of certain patent rights to Plaintiff for a reasonable price.  (D.I. 2 at 10-11).  Thereafter, in its initial disclosures, Plaintiff sought expectation damages of no less than $4,539,934, which included:  the $2,000,000 purchase price of the Agreement, $250,000 per month starting in January 2017 for the option to license the patent rights (totaling $2,250,000 at the time) and $349,934 in additional costs incurred by the breach minus $60,000 in value received.  (D.I. 181, Ex. B).

When Plaintiff's damages came up in connection with summary judgment and *Daubert* motions, the amount and theories changed again.  In the December 2020 briefing on *Daubert* motions, Plaintiff stated that it only sought restitution of the purchase price in the amount of $2,000,000.  (*See* D.I. 120 at 3-4).  At the same time, in its summary judgment briefing, Plaintiff argued that reliance and liquidated damages pursuant to the contract were the appropriate remedies.  (*See* D.I. 114 at 17-19; D.I. 121 at 3-5).  Plaintiff altered its position again during oral argument, apparently agreeing that it was seeking only restitution damages of $2,000,000. (D.I. 155 at 4:2-7 (agreeing that Plaintiff was seeking only "$2 million in contract price as restitution damages for whatever counts there are"); *see also id.* at 18:3-19:13; 24:7-22; 33:7-17; 35:15-25; 46:25-47:18).   Then, in the Proposed Pretrial Order, Plaintiff asked for "up [to] $2,000,000 as damages whether denominated as damages for breach, 'restitution damages[,]' liquidated damages, and/or a contractually specified remedy (§ 3.1(c))" as well as some unspecified "amount of damage suffered by [Plaintiff]" due under an unstated theory.  (D.I. 182 at

4, 8). When the Court pointed out that the various theories of recovery "denominated" in the Proposed Pretrial Order likely require different elements be proven, Plaintiff settled on its current contention, *i.e.*, restitution as a remedy for the alleged breaches of sections 1.8 and 2.1 of the Agreement (D.I. 194 at 3:22-4:9) and "contractually specified damages" as a remedy for the alleged breach of section 3.1(c) (*id.* at 32:6-16).

The trial date in this case was extended multiple times, sometimes by agreement and other times at the request of Plaintiff due to the pandemic. On February 28, 2023, in advance of the Pretrial Conference, Defendants filed a letter notifying the Court that they believed Plaintiff would not be able to present its damages theory at trial and thus could not prevail on its breach of contract claim. (*See* D.I. 178). The Court allowed Defendants to file a motion regarding the issue. (*See* D.I. 179). That Motion is presently before the Court. (*See* D.I. 180). The parties completed briefing on March 13, 2023. (*See* D.I. 180, 190 & 193). The Court heard oral argument on the issue during the Pretrial Conference on March 14, 2023.[2]  (*See* D.I. 194).

## II.    LEGAL STANDARD

To state a breach of contract claim under Delaware law, Plaintiff must plead (1) the existence of a contract, (2) the breach of a contractual obligation and (3) a resultant damage. *See VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003). Proof of damages is an essential element of a breach of contract claim. *See In re Cendant Corp. Sec. Litig.*, 181 F. App'x 206, 210 (3d Cir. 2006).

"In general, contract law espouses three distinct, yet equally important, theories of damages to remedy a breach of contract: 'expectation' damages, 'reliance' damages, and 'restitution'

---

[2]     After the March 14, 2023 Pretrial Conference, the parties informed the Court that they had executed a term sheet outlining the settlement of the case and asked for a postponement of the trial. (*See* D.I. 200). When the promised settlement failed to materialize, the Court set July 31, 2023 as the new trial date.

damages." *ATACS Corp. v. Trans World Commc'ns, Inc.*, 155 F.3d 659, 669 (3d Cir. 1998) (citing *Trosky v. Civil Serv. Comm'n*, 652 A.2d 813, 817 (Pa. 1995)). "It is well established in Delaware law that expectation damages are the standard remedy for breach of contract." *Delaware Exp. Shuttle, Inc. v. Sam Waltz & Assocs. LLC*, No. CPU4-10-000005, 2013 WL 3776523, at *3 (Del. Com. Pl. July 1, 2013). An injured party may, however, seek the remedy of restitution when the injured party's ability to recover under expectation damages is clouded because of uncertainty in measuring the loss in value to the harmed party. The objective of this approach "is not the enforcement of contracts through the protection of an injured party's expectation or reliance interests, but is instead rooted in common notions of equity through the protection of the injured's restitution interest." *ATACS Corp.*, 155 F.3d at 669.

## III.   DISCUSSION

Plaintiff argues that it is entitled either to restitution of the $2,000,000 purchase price for the alleged breaches of sections 1.8 and 2.1 of the Agreement (*see* D.I. 194 at 3:22-4:9) or to "contractually specified damages" in the same amount for the alleged breach of section 3.1(c) (*see id.* at 32:6-16). Defendants argue that Plaintiff should be barred from presenting either theory at trial because (1) Plaintiff failed to timely disclose the theories and (2) Plaintiff cannot pursue the theories as a matter of law. (*See* D.I. 180).

With respect to Defendants' timeliness arguments, the Court finds that Plaintiff has not waived its damages theories. As noted above, Plaintiff's damages allegations have continually changed throughout this case from expectation damages of more than $4,000,000 to the current request for restitution of $2,000,000, accompanied by some discarded theories along the way (*e.g.*, reliance and liquidated damages). Although the Court is not blind to Plaintiff's failure to clearly articulate its position as to the amount or theory of recovery, it is clear that the one constant throughout has been the request for return of the $2,000,000 payment. Moreover, although the

Court is sympathetic to Defendants' point that addressing Plaintiff's damages is sometimes akin to a game of whack-a-mole, it appears that Defendants did not clearly ask Plaintiff about the basis of its claim for damages. (*See* D.I. 194 at 37:7 – 38:13). Thus, the Court will not find that Plaintiff has waived all claims to recovery and, instead, the Court will address Plaintiff's current claim that it is entitled to restitution as a remedy for the alleged breaches of sections 1.8 and 2.1 of the Agreement (D.I. 194 at 3:22-4:9) and to "contractually specified damages" as a remedy for the alleged breach of section 3.1(c) (*id.* at 32:6-16).

### A.        Plaintiff's Damages as to Sections 1.8 and 2.1

"A restitution remedy for breach of contract seeks 'to return the parties, as nearly as is practicable, to the situation in which they found themselves before they made the contract.'" *R.M. Williams Co. v. Frabizzio*, No. 90C-MY-10, 1993 WL 54423, at *14 (Del. Super. Ct. Feb. 8, 1993) (quoting Restatement (Second) of Contracts § 384 cmt. a). Delaware recognizes two conditions for restitution where the breach is caused by non-performance (rather than repudiation).[3] First, "restitution is available only if the breach gives rise to a claim for damages for total breach and not merely to a claim to damages for partial breach." *R.M. Williams*, 1993 WL 54423, at *15 n.18 (quoting Restatement (Second) of Contracts § 373 cmt. a). Second, restitution is not available if "Plaintiff has retained the performance tendered by Defendants, and does not intend to return it." *Id.* at *15.

Defendants argue that restitution is not available as a remedy because (1) Plaintiff alleges partial breach and (2) Plaintiff retained performance tendered by Defendant. For the reasons set forth below, the Court agrees with Defendants.

---

[3]        Neither party asserts repudiation of the Agreement.

### 1.      Total Breach

When a party to a contract materially breaches, the non-breaching party has two choices: (1) it may terminate the agreement and sue for total breach, or (2) it can elect to continue performance under the contract and sue for partial breach. *See Macrophage Therapeutics, Inc. v. Goldberg*, No. 2019-0137-JRS, 2021 WL 2582967, at \*14 (Del. Ch. June 23, 2021); 13 Williston on Contracts § 39:32 (4th ed.); *R.M. Williams*, 1993 WL 54423 at \*15 n.18.  "If the injured party elects to or is required to await the balance of the other party's performance under the contract, his claim is said instead to be one for damages for partial breach."  Restatement (Second) of Contracts § 236 cmt. b.  And the remedy of restitution is unavailable.  *See R.M. Williams*, 1993 WL 54423, at \*15 n.18 (quoting Restatement (Second) of Contracts § 373 cmt. a).

Here, in its Complaint, Plaintiff alleges that it gave formal notice of Defendants' breach on June 23, 2016 for, among other things, failure to convey the intellectual property and technical information as promised.  (D.I. 2 ¶ 34).  At that point, assuming the breach was material as Plaintiff argues, Plaintiff could have elected to terminate the Agreement and sue for total breach.  Instead, in December 2016, Plaintiff chose to exercise its option to the patent rights under the Agreement. (*See* D.I. 181, Ex. I).  Plaintiff thus chose to continue performance by exercising its option and awaiting Defendants' performance under the Agreement for the license to the patents and, as a result, Plaintiff can only claim partial breach.  As such, Plaintiff is not entitled to restitution.

### 2.      Retention of Performance

Restitution is also "not appropriate where the plaintiff does not return the performance tendered by the defendant."  *Delaware Exp. Shuttle*, 2013 WL 3776523, at \*3.  Here, there is no doubt that Plaintiff received at least some intellectual property and technical know-how as well as

consulting services[4] under the Agreement.  (*See* D.I. 181, Ex. B at 4 (Plaintiff's Initial Disclosures

representing the worth of the provided technology as "at best" $10,000)).  Plaintiff has shown no

indication that it intends to return the copies of the technical information it has received.  Plaintiff

also received "an option priced at" $50,000.  (*Id.*).  The record thus indicates that Plaintiff received

some benefit from the Agreement and, accordingly, the Court finds no basis for Plaintiff to obtain

restitution as a remedy for the asserted breaches.  *See Delaware Exp. Shuttle*, 2013 WL 3776523,

at *3.

*      *      *

In sum, Plaintiff does not meet either of the conditions for restitution and thus restitution

is not an appropriate remedy as to sections 1.8 and 2.1 of the Agreement.

### B.      Plaintiff's Damages as to Section 3.1(c)

Plaintiff contends that Defendants breached section 3.1(c) of the Agreement, which

addresses consulting services provided by Defendants to Plaintiff.  (D.I. 190 at 2).  In relevant part,

section 3.1(c) states:

> In the event that Seller does not provide the Consulting Services to
> the reasonable satisfaction of Purchaser, then Seller shall be in
> material breach of this Agreement and Purchaser shall be entitled to
> pursue any remedies available to it against Seller, including, without
> limitation, the right to seek damages in the amount of the entire
> Purchase Price.

(D.I. 2, Ex. A).  During the Pretrial Conference, Plaintiff clarified that it seeks "contractually

specified damages" under this provision, which Plaintiff distinguished from liquidated damages.[5]

---

[4]      Because Plaintiff is now only seeking restitution as to the technical information provided,
the Court will not include the consulting services in its analysis and will address those in
conjunction with Plaintiff's arguments about contractual damages.

[5]      Plaintiff cites to one case stating that "[w]here parties have expressed their expectations
through a specific contractual remedy, Delaware law favors enforcing that remedy," but
that case involved a contractual dissociation remedy for a partnership in lieu of expectation

7

(D.I. 194 at 32:4-16).   Defendants argue that section 3.1(c) merely provides Plaintiff with the

option to seek available damages.  (*See* D.I. 180 at 4-5; D.I. 194 at 6:16-23).  Defendants' argument

turns on the interpretation of the damages provision in section 3.1(c).  The question thus becomes

what does this provision mean?

> The law of contract interpretation in Delaware is straightforward:

>> When the contract is clear and unambiguous, [Delaware courts] give
>> effect to the plain-meaning of the contract's terms and provisions,
>> without resort to extrinsic evidence.  To aid in the interpretation of
>> the text's meaning, Delaware adheres to the 'objective' theory of
>> contracts, *i.e.* a contract's construction should be that which would
>> be understood by an objective, reasonable third party.  The contract
>> must also be read as a whole, giving meaning to each term and
>> avoiding an interpretation that would render any term mere
>> surplusage.  But general terms of the contract must yield to more
>> specific terms.  If, after applying these canons of contract
>> interpretation, the contract is nonetheless reasonably susceptible [to]
>> two or more interpretations or may have two or more different
>> meanings, then the contract is ambiguous and courts must resort to
>> extrinsic evidence to determine the parties' contractual intent.

*Sunline Com. Carriers, Inc. v. CITGO Petroleum Corp.*, 206 A.3d 836, 846-47 (Del. 2019)

(cleaned up).

In essence, "[w]hether a contract is ambiguous is a question of law to be decided by the

court."  *Mack Trucks Inc. v. BorgWarner Turbo Sys., Inc.*, 508 F. App'x 180, 183 (3d Cir. 2012)

(citing *Allegheny Int'l, Inc. v. Allegheny Ludlum Steel Corp.*, 40 F.3d 1416, 1424 (3d Cir. 1994)).

But if the Court determines that a contract is ambiguous, "then 'a decision as to which of the

competing interpretations of the contract is the correct one is reserved for the factfinder, who would

examine the content of the extrinsic evidence (along with all the other evidence) in order to make

this determination.'"  *Philadelphia Workforce Dev. Corp. v. KRA Corp.*, 673 F. App'x 183, 188

---

damages (which are not sought here).  (D.I. 190 at 9-10 (citing *In re Cellular Tel. P'ship Litig.*, No. 6885-VCL, 2021 WL 4438046, at *72 (Del. Ch. Sept. 28, 2021))).

(3d Cir. 2016) (citing *Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 94 (3d Cir. 2001)); *see also Khan v. Delaware State Univ.*, No. N14C-05-148-AML, 2017 WL 815257, at *3 (Del. Super. Ct. Feb. 28, 2017) ("If the contract is ambiguous, the resolution of the ambiguity becomes a trial issue for the jury, which may consider extrinsic evidence to construe the contract or determine the parties' intent." (cleaned up)).

Here, having reviewed section 3.1(c), the Court finds that the provision is reasonably susceptible to two or more interpretations. For example, the provision could be read as stating that Plaintiff is entitled to pursue "available" remedies and, thus, if the entire purchase price is an available remedy, then Plaintiff may pursue it. Alternatively, the provision could be read to define the amount of the entire purchase price as an available remedy. As such, "the language is ambiguous as to damages, and [the Court] will leave its interpretation to a factfinder." *W.B. v. Matula*, 67 F.3d 484, 498 (3d Cir. 1995), *abrogated on other grounds by A.W. v. Jersey City Pub. Schs.*, 486 F.3d 791 (3d Cir. 2007).

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion (D.I. 180) is GRANTED-IN-PART and DENIED-IN-PART. The Motion is GRANTED as to Plaintiff's claim for restitution damages for the alleged breaches of sections 1.8 and 2.1. The Motion is DENIED as to Plaintiff's claim for damages for the alleged breach of section 3.1(c).[6] An appropriate order will follow.

---

[6]    To the extent that Defendants also ask the Court to "dismiss Plaintiff's remaining breach of contract claim," the Motion is denied given that the Court has found Plaintiff can proceed on its claim for damages with respect to section 3.1(c). (D.I. 180 at 10). The parties should be prepared to discuss the impact of this ruling on Plaintiff's claim at the Supplemental Pretrial Conference scheduled for July 28, 2023. (*See* D.I. 207).